WOLFE v. ANDREWS.   (No. 7678.)

(Court of Civil Appeals of Texas. Dallas. Jan. 20, 1917.)

GAMING ⊂⊃14—CONTRACTS—CONSTRUCTION—
"WAGERING CONTRACT."

A contract for the sale and purchase of cotton which provided that should market price of cotton change within a given time, etc., the seller would pay the buyer the difference between the sale price and any increase, and the buyer pay the difference between the sale price and any decrease, while couched in terms peculiar to the cotton trade, is a "wagering contract," and may be so declared by the court, regardless of any ambiguity due to technical terms.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 25, 26.

For other definitions, see Words and Phrases, First and Second Series, Wager Contract.]

Appeal from District Court, Wood County; R. M. Smith, Judge.

Action by M. H. Wolfe against H. G. Andrews. From a judgment for defendant, plaintiff appeals. Affirmed.

---

M. D. Carlock, of Winnsboro, J. E. Gilbert, of Dallas, and D. Upthegrove, of St. Louis, Mo., for appellant. Beavers & Wilkinson, of Winnsboro, Harris, Suiter & Britton, of Quitman, and Jones & Jones, of Mineola, for appellee.

RAINEY, C. J. Appellant sued appellee to recover $5,193.92 on a transaction for the purchase and sale of 1,600 bales of cotton. Appellee answered by general and special demurrers, which were sustained, and appellant refusing to amend, judgment was rendered for appellee, from which this appeal is taken.

The first, second, and seventh assignments of error complain of the sustaining of demurrers, to wit: General demurrer and special demurrers to the effect that the plaintiff's petition shows on its face that it was a wagering or gambling contract, and contrary to public policy; that the petition alleged, in effect, that defendant sold and delivered to plaintiff 1,600 bales of cotton at 14.39 cents, basis middling, which was a complete sale, and the title thereto fully vested in plaintiff; and that in said contract was an additional paragraph wherein plaintiff and defendant entered into a wager or bet as to the future price of cotton, which made the liability, if any, of one to the other depend upon the decline in the price of cotton, which constituted a gambling transaction in violation of law.

The petition to which demurrers were sustained, omitting formal parts, alleged as follows:

"That heretofore, to wit, on or about December 23, 1910, and dated as of said date plaintiff and defendant made and entered into the following contract in writing, signed by them respectively, to wit:

" 'Dallas, Texas, Dec. 28, 1910.

" 'Mr. R. G. Andrews, Winnsboro, Texas— Dear Sir: We confirm purchase from you this day through Mr. Will Rash, Sulphur Springs, Texas, of the following cotton: Sixteen hundred (1,600) bales cotton at 14.39¢, basis middling, based on March New Orleans at 15.14¢, your option of fixing the price during market hours at any time between now and March 1, 1911, by giving notice to us of the time you select to fix the price. It is understood that at the time you select to fix the price if March New Orleans is above 15.14¢ we will pay you the difference, but if March New Orleans is below 15.14¢ you will pay the difference. Please confirm the sale by signing and returning the attached copy of this letter.

" 'Yours very truly,

" 'M. H. Wolfe & Co., per J. H. H.'

" 'The above contract is accepted. R. G. Andrews.'

"That thereupon, and under the terms of said contract, defendant shipped and delivered to plaintiff the 1,600 bales of cotton specified in said contract, and invoiced the same, and on the 29th day of December, 1910, plaintiff advanced to defendant $118,014.99, including exchange of $218.36 upon said 1,600 bales of cotton. By the terms of the contract aforesaid, and in accordance with the interpretation thereof by the parties thereto, the defendant reserved the right to fix the price of the cotton at which he would consummate the deal, not being willing to sell at the price prevailing in the market on the date of the shipment and contract, but defendant retained an interest therein, together with said right to fix the sale price at any time prior to March 1, 1911, as named in said contract, to be governed by the terms of the contract and the basis being what is known among cotton men as basis middling and based on the prevailing price in New Orleans, and reserving the right of fixing the price during the market hours at any time before March 1, 1911, by giving notice to plaintiff of the time defendant should elect to fix the price, and based upon the prevailing price at New Orleans, as specified in said contract, and that if the defendant did not sooner elect to fix the price the limit fixed in the contract within which the right should be exercised by defendant should be March 1, 1911, as in said contract stated, and that if it was not sooner fixed the market conditions on that date should bind both parties. That by the terms of said contract, option to fix the price was under the exclusive control of defendant, and it was immaterial to plaintiff at what date defendant elected to fix the price prior to March 1, 1911. That plaintiff advanced to defendant, as aforesaid, the total sum of money aforesaid including exchange upon the cotton so sold and delivered by defendant to plaintiff, but defendant did not elect to fix the price until the expiration of the time stated in the contract, to wit, March 1, 1911, when the same was fixed by the terms of the contract and the sale closed thereby and the option to fix the price expired, and the defendant so notified and he had been previously notified that the option would expire on that date and asking that the price be fixed and notice given to plaintiff. That the price was not fixed in and by the terms of the contract because defendant was not willing to sell at the then market value of said cotton. That by the terms of the agreement made in the negotiations between plaintiff who acted by and through his duly authorized agent, Will Rash, and the defendant the cotton was not to be sold plaintiff until so directed by defendant, but that portion of the negotiations and agreement was omitted in writing up the contract, which was done in plaintiff's office in Dallas, and transmitted to defendant for his signature by mail after invoice of said cotton had been made by plaintiff's said agent, Rash. That plaintiff's said agent wanted and offered to buy said cotton outright in order that it might belong to plaintiff and under his entire disposition and control, and the plaintiff would have paid more for the cotton if so bought than he agreed to advance thereon under the terms of the contract, but defendant declined to sell outright for the reason that he wanted more than the market value. Plaintiff further shows that the parties thereto construed, treated and acted upon said contract as a valid and binding contract made in good faith upon the delivery of the cotton for the purpose and with intent that defendant might fix the price at a future date at which time the sale should be consummated; and defendant repeatedly declared and treated by his conduct, acts and declarations; that the contract was one by which he had not fixed the price at which the deal should be closed, but had reserved the right to fix the price as per the terms therein stated, and while so acting and while the price was advancing stated he had made by not selling outright and by not fixing the price at the time of delivery as much as $1,500 thereon. Plaintiff further shows that the contract as written is stated in terms familiar only to cotton men and those versed in the technical language thereof, and it is not intelligible to others not so versed without explanation, but is ambiguous and uncertain, but plaintiff and defendant knew its meaning to be as alleged, and they both so understood and construed and treated and acted upon it as having the meaning alleged, and that it was made with the intent that it should have such meaning and be so treated, and that the price

was not therein fixed and determinated, but was to be fixed at and within the time agreed upon for defendant to fix such price upon the technical basis agreed upon and so understood and construed by the parties; that on said date, March 1, 1911, said cotton on the basis contracted for in said contract, based on New Orleans basis middling was 13.75¢ when the amount advanced to defendant on December 29th, was at 14.29¢ being below the sum advanced and calculated upon the terms of the contract aforesaid that plaintiff had advanced to defendant in excess of what he should have done the sum of $5,193.92, the said cotton being worth less in the market than the amount advanced by plaintiff to defendant, whereby defendant became liable and promised to pay plaintiff the said sum of $5,193.92."

Under the foregoing assignments appellant presents the proposition that:

"When the effect of a writing does not depend entirely upon the construction or meaning of its terms, but upon extrinsic facts and circumstances, then it becomes the duty of the court to submit, for the consideration of the jury, the instrument, together with the attending facts and circumstances adduced in evidence, with such instructions upon the legal effect of the instrument as will meet the various phases presented by the extrinsic evidence."

We have no criticism to make of appellant's proposition as to its being sound as a proposition of law, but we think the contract is subject to construction by the court and is contrary to the law. It shows that the cotton was purchased, and the allegations of the petition show that in pursuance thereof it was delivered, and that so much money was advanced at the price of 14.39 cents basis middling, based on March New Orleans at 15.14 cents, etc., appellee to have the option of fixing the price at any time before March 1, 1911. While there may be some ambiguity in the terms thus far expressed to the uninformed mind in the cotton trade there is none in the latter clause, which reads:

"It is understood that at the time you select to fix the price if March New Orleans is above 15.14¢ we will pay you the difference, but if March New Orleans is below 15.14¢ you will pay the difference"

—which shows that the difference in the price of cotton was to be fixed at March 1st, New Orleans, and whether or not at that time it was above or below that figure the difference was to be paid to the one or the other. This was uncertain and not definite as to the price to be paid, and showed that chances were taken as to what the difference would be. The terms of this much of the contract being certain it was the duty of the court to construe it, and not leave any construction to be placed upon it by a jury, as it showed on its face that it was in violation of law. We are of the opinion that the contract relied on is a wagering one and one upon which no recovery can be had. In support of this holding we rely on the case of Burney v. Blanks, 136 S. W. 806, in which case a writ was denied by our Supreme Court. The opinion in that case was rendered by the Third Court of Civil Appeals at Austin, and the opinion written by Mr. Chief Justice Key. The principle announced therein, we think clearly in point, and settles this case against appellant. Said opinion had not been rendered when the transaction in this case was had, and evidently the parties here did not think this contract unlawful, nevertheless they so wrote it and by it they are bound.

There are several other assignments and propositions submitted, but, construing the contract to be unlawful, we deem it unnecessary to pass on them.

The judgment of the court below is affirmed.